IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KNIGHTS OF COLUMBUS STAR OF THE SEA COUNCIL 7297, | |
| Plaintiff, | |
| v. | |
| CITY OF REHOBOTH BEACH, DELAWARE; | Civil Case. No. 1:20-cv-00841-LPS |
| STAN MILLS, in his official capacity as Mayor of Rehoboth Beach, Delaware; | **JURY TRIAL DEMANDED** |
| PAUL KUHNS, individually; | |
| SHARON LYNN, individually and in her official capacity as City Manager of Rehoboth Beach, Delaware; | |
| Defendants. | |

## <u>PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION</u>

Christopher DiPompeo  (*pro hac vice*)
Kaytlin L. Roholt (*pro hac vice*)
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001-2113
Telephone:  (202) 879-7686
Fax:  (202) 626-1700
cdipompeo@jonesday.com
kroholtlane@jonesday.com

Roger Byron (*pro hac vice*)
FIRST LIBERTY INSTITUTE
2001 Plano Parkway, Suite 1600
Plano, TX 75075
Telephone: (972) 941-4444
Fax: (972) 941-4457
rbyron@libertyinstitute.org

Michael P. Morton (Bar ID # 002492)
Robert J. Valihura, Jr. (Bar ID # 02638)
David C. Zerbato (Bar ID # 005671)
MORTON, VALIHURA & ZERBATO, LLC
3704 Kennett Pike, Suite 200
Greenville Professional Building
Greenville, DE 19807
Telephone: (302) 426-1313
Fax: (302) 426-1300
mmorton@mvzllc.com

*Counsel for Plaintiff Knights of Columbus
Star of the Sea Council 7297*

Dated: November 23, 2020

## TABLE OF CONTENTS

**Page**

**INTRODUCTION**........................................................................................................... 1

**I.**     **The Knights' Motion For A Preliminary Injunction Is Not Moot.** ................................. 2

**II.**    **Defendants Have Waived Any Argument That The No-Religious-Displays Policy Is Constitutional.** ........................................................................................ 4

**III.**   **The City's Policy Remains An Unconstitutional Restriction On Speech.**...................... 5

    **A.**   **The 2020 Policy Is Facially Content-Based And Fails Strict Scrutiny.**...................... 5

    **B.**   **The 2020 Policy Is Incapable Of Reasoned Application.** ........................................... 9

**CONCLUSION** ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACLU v. Mukasey*,
    534 F.3d 181 (3d Cir. 2008).............................................................................................7, 8

*Bruni v. City of Pittsburgh*,
    824 F.3d 353 (3d Cir. 2016).................................................................................................10

*Chafin v. Chafin*,
    568 U.S. 165 (2013).............................................................................................................3, 4

*Ctr. for Investigative Reporting v. Se. Pa Transp. Auth.*,
    975 F.3d 300 (3d Cir. 2020).............................................................................................9, 10

*Delaware Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot.*,
    833 F.3d 360 (3d Cir. 2016)...................................................................................................3

*Dimmitt v. Clearwater*,
    985 F.2d 1565 (11th Cir. 1993) ............................................................................................7

*Free Speech Coal., Inc. v. AG United States*,
    825 F.3d 149 (3d Cir. 2016)...................................................................................................5

*In re Subpoena 2018R00776*,
    947 F.3d 148 (3d Cir. 2020)...................................................................................................7

*Knights of Columbus, Council #94 v. Town of Lexington*,
    272 F.3d 25 (1st Cir. 2001)...............................................................................................6, 7

*Minn. Voters All. v. Mansky*,
    138 S. Ct. 1876 (U.S. 2018)..............................................................................................7, 10

*Mission Product Holdings, Inc. v. Tempnology, LLC*,
    139 S.Ct. 1652 (2019)..............................................................................................................3

*Morse v. Frederick*,
    551 U.S. 393 (2007)...............................................................................................................10

*Opulent Life Church v. City of Holly Springs, Mississippi*,
    697 F.3d 279 (5th Cir. 2012) .................................................................................................4

# TABLE OF AUTHORITIES

**Page(s)**

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
  551 U.S. 701 (2007)....................................................................................................4

*Peters v. Ryan*,
  No. 16-cv-01332-RGA, 2017 WL 1393692 (D. Del. Apr. 13, 2017).......................................5

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015)...................................................................................5, 6, 8, 9

*Santa Monica Nativity Scenes Committee v. City of Santa Monica,*
  784 F.3d 1286 (9th Cir. 2015) ...............................................................................6

*United States v. Marcavage*,
  609 F.3d 264 (3d Cir. 2010)..............................................................................7, 9

*United States v. Stevens*,
  533 F.3d 218 (3d Cir. 2008) (en banc), *aff'd* 130 S.Ct. 1577, 559 U.S. 460
  (2010) .............................................................................................................8

*United States v. Williams*,
  553 U.S. 285 (2008)............................................................................................10

**OTHER AUTHORITIES**

U.S. CONST. amend. I .............................................................................................2, 3, 4, 10

*Governor Carney Announces Additional COVID-19 Restrictions* (Nov. 17, 2020),
  https://news.delaware.gov/2020/11/17/governor-carney-announces-additional-
  covid-19-restrictions/ ........................................................................................10

Deana Harley, Rehoboth Beach says no nativity scene allowed on boardwalk,
  WMDT (Nov. 18, 2019) (video at 00:55),
  https://www.wmdt.com/2019/11/rehoboth-beach-says-no-nativity-scene-
  allowed-on-boardwalk/ ........................................................................................1

## INTRODUCTION

Since 2018, Defendants have implemented and enforced a no-religious-displays policy—a policy expressly attested to by both the City's then-mayor and its current city manager—to forbid the Knights from erecting a crèche on City property for the express reason that a crèche is "religious." Defendants make no effort either to defend this policy or provide evidence it has been revoked. Instead, Defendants claim the Knights' request for preliminary injunctive relief is moot following the City's adoption of its Holiday Display Policy ("2020 Policy")[1] and now demand the 2020 Policy "be evaluated." Defs.' Opp'n at 2. But in adopting the 2020 Policy, Defendants have merely layered one facially unlawful policy over another. In reality, the City has doubled down on the constitutional infirmities that already plague its no-religious-displays policy and has conspicuously refused to disavow its blatantly unlawful no-religious-displays policy even now.[2]

The City's 2020 Policy is an unlawful content-based restriction on speech: it constrains speech on the basis of its communicative content, and is neither reasonable nor narrowly tailored or the least restrictive means to achieve a compelling government interest. The City's purported justification for the policy—to preserve aesthetics and limit the impact of private displays on public property, *see* Defs.' Opp'n at 15—is merely a pretext; if the City were genuinely concerned with aesthetics and obstruction, it would have implemented a lawful policy, not banned symbols

---

[1] Defendants fault the Knights for filing its Motion before the City's adoption of the 2020 Policy, suggesting that the Knights should have trusted that the City would in good faith adopt a constitutionally permissible policy. *See, e.g.*, Defs.' Opp'n [D.I. 16] at 1. But with the Christmas season fast approaching—and in light of Defendants' demonstrated history of unconstitutional conduct that has already twice prevented the Knights from exercising its free speech and free exercise rights—the Knights could not wait any longer to seek relief from this Court. Indeed, far from curing the City's unlawful conduct, it was evident that the proposed policy would further entrench it.

[2] The record in this case makes clear that the City has a no-religious-displays policy. *See, e.g.*, Cocco Decl. [D.I. 15-4] ¶¶ 21, 28 & Ex. F (email from Defendant Lynn to the Knights explaining that the crèche was forbidden from public property "because it's religious"); Deana Harley, *Rehoboth Beach says no nativity scene allowed on boardwalk*, WMDT (Nov. 18, 2019) (video at 00:55), https://www.wmdt.com/2019/11/rehoboth-beach-says-no-nativity-scene-allowed-on-boardwalk/ (video of Defendant Kuhns stating that "the city policy is not to have religious displays on public property"). Indeed, despite ample opportunity, Defendants have not disavowed Defendant Kuhns' and Defendant Lynn's repeated statements confirming the existence of this unlawful policy.

associated with the period between November 15 and January 15. Indeed, the City's 2020 Policy is riddled with inconsistencies that undermine Defendants' alleged purposes for it. It prohibits any displays on City property referencing Christmas, Hanukah, Kwanzaa, and Thanksgiving, but it permits displays referencing Easter, Ramadan, Passover, and Yom Kippur. It permits displays commemorating Veterans Day, Memorial Day, and the Fourth of July, but it prohibits displays acknowledging Transgender Day of Remembrance, World AIDS Day, and International Day for the Elimination of Violence Against Women. Some years it prohibits displays celebrating Martin Luther King Jr. Day, but in other years, those displays would be permitted. The 2020 Policy targets large swaths of constitutionally protected speech—while leaving other speech untouched—without justification. Moreover, the 2020 Policy, hastily adopted, is incapable of reasoned application because its language is incomprehensibly vague.

At bottom, Defendants continue to deny the Knights' simple request—that it be permitted to erect a display on the same terms as other private groups and individuals. There is no legal justification for Defendants to deny such a request. Unless this Court acts, yet another Christmas season will pass in which the Knights' First Amendment rights are trampled and lost.

## I.  The Knights' Motion For A Preliminary Injunction Is Not Moot.

The Knights seeks, among other relief, a preliminary injunction "requir[ing] Defendants to provide the Knights the same benefits and opportunities to display a crèche at the Bandstand/Boardwalk Circle during the Christmas holiday season as Defendants provide any other private person, group, organization, and/or entity for any other display." Pl.'s Mot. [D.I. 14] at 1–2.[3]  That request remains unaffected by the 2020 Policy. Defendants' claim that the Knights'

---

[3] Contrary to Defendants' assertion, the Knights has not requested a "mandatory preliminary injunction" "compel[ling] the City to permit the Knights to erect its religious display on City property." Defs.' Opp'n at 10. Nor does the Knights seek the City's "public backing" of its religious message. *Id.* at 16. The Knights merely requests that the City be required to provide the Knights equal treatment. *See* Pl.'s Mot. at 1–2. And as the Knights explained in its

Motion is somehow "mooted by the Commissioners' adoption of the 2020 Policy," Defs.' Opp'n at 6, is without legal support.

To demonstrate mootness, a defendant must satisfy a "demanding standard." *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S.Ct. 1652, 1660 (2019).  As the Supreme Court has made clear, and as Defendants acknowledge, Defs.' Opp'n at 8, "a case becomes moot only when it is impossible for a court to grant *any* effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (emphasis added) (internal quotation marks omitted); *see also Delaware Riverkeeper Network v. Sec'y Pa. Dep't of Env't Prot.*, 833 F.3d 360, 374 (3d Cir. 2016).  "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin*, 568 U.S. at 172 (internal quotation marks omitted).

Here, Defendants argue that the Knights' request for a preliminary injunction[4] is moot because "the Knights can only present hypothetical claims based upon events that allegedly occurred in 2018 and 2019, for which the Court cannot provide preliminary injunctive relief against the 2020 Policy." Defs.' Opp'n at 7.  But the City's 2020 Policy unquestionably continues to prevent the Knights from erecting a crèche on City property while allowing other private groups and individuals to erect displays pertaining to sports, social events, commercial activity, or any other matter—so long as such displays are not associated with or intended to relate to the period between November 15 and January 15, whatever that means.  *See* Lynn Decl. Ex. A [D.I. 16-4].  The 2020 Policy therefore does not provide the Knights "the same benefits and opportunities to display a crèche at the Bandstand/Boardwalk Circle during the Christmas holiday season" as it provides other private groups who seek to erect displays unrelated to the holiday season.  Not only

---

Opening Brief, *see* Pl.'s Br. at 17–18, it is no answer to Defendants' unlawful and discriminatory treatment of the Knights' speech and religious exercise to suggest that the Knights may exercise its First Amendment rights elsewhere.

[4] Defendants do not argue that the 2020 Policy has in any way affected the other relief the Knights has requested.

is it *not* "impossible for [the] [C]ourt to grant any effectual relief whatever to the prevailing party,'" *Chafin*, 568 U.S. at 172 (quoting *Knox v. Service Employees,* 567 U.S. 298, 307 (2012)), it remains possible—and necessary—for the Court to grant the Knights' requested relief *in its entirety*.[5]

Furthermore, Defendants' claim that the 2020 Policy does not run afoul of the First Amendment, *see* Defs.' Opp'n at 6, aside from being incorrect as a legal and factual matter, *see infra* 5–10, does not answer the mootness inquiry. What matters for purposes of mootness is whether the Knights continues to allege a cognizable *injury* stemming from Defendants' refusal to allow the crèche—not whether the Knights is likely to prevail on the merits of that challenge. *See Chafin*, 568 U.S. at 174. There is no doubt that the Knights continues to allege such an injury.

Finally, Defendants fail to demonstrate mootness for the wholly separate reason that the City has never disavowed its no-religious-displays policy, which continues to persist notwithstanding the City's 2020 Policy. Defendants assert that the no-religious-displays policy is inoperative, *see* Opp'n at 6, but proffer no evidence that the policy has been revoked. Indeed, not only have Defendants failed to show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U.S. 701, 719 (2007), they have "repeated" and "doubled down" on their unlawful conduct, *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 286 (5th Cir. 2012). A preliminary injunction prohibiting religious discrimination therefore remains necessary.

## II.   Defendants Have Waived Any Argument That The No-Religious-Displays Policy Is Constitutional.

In order to justify their discriminatory treatment of the Knights, Defendants make a series of misrepresentations, including that (1) Father Cocco refused to share public space with other

---

[5] Even if the 2020 Policy did supplant the no-religious-displays policy, it could only do so for displays related to November 15–January 15. At the very least, then, the City's no-religious-displays policy is still operative as to all displays associated with or intended to relate to January 16 through November 14, whatever that means.

religious organizations, *see* Defs.' Opp'n at 2 n.3; (2) Defendants prohibited the Knights from displaying the crèche on City property in 2019 because the median "was just re-sodded," *id.*; and (3) all private displays were required to be displayed at the Chamber's property during the 2019 holiday season, *see id.* As the record shows, all of these claims are false.[6] But apart from these attempts to mislead the Court, Defendants proffer no legal arguments that the City's no-religious-displays policy is constitutional. Defendants have therefore waived any such argument for the purposes of the Knights' Motion for a Preliminary Injunction. *Peters v. Ryan,* No. 16-cv-01332-RGA, 2017 WL 1393692, at \*2 (D. Del. Apr. 13, 2017) ("When a party files an opposition brief and fails to contest an issue raised in the opening brief, the issue is considered waived or abandoned by the non-movant."). The Court should enjoin Defendants' no-religious-displays policy.

## III.   The City's Policy Remains An Unconstitutional Restriction On Speech.

Like the City's no-religious-displays policy, the 2020 Policy unlawfully discriminates against speech based solely on its content.[7]

### A.   The 2020 Policy Is Facially Content-Based And Fails Strict Scrutiny.

"Government regulation of speech is content based if [it] applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). A content based restriction "depend[s] entirely on the communicative content of the [display]," *Free Speech Coal., Inc. v. AG United States*, 825 F.3d 149, 159 (3d Cir. 2016), or "draws distinctions based on the message a speaker conveys."

---

[6] *See, e.g.*, Cocco Decl. at ¶ 12 (establishing that representatives from Saint Edmond's "reached out to a number of local religious communities to offer them an opportunity to participate in the display, but none of the communities desired to do so"); *Id.* at ¶¶ 20–21 & Exs. E & F (email exchange between the Knights and Defendant Lynn in which Defendant Lynn confirmed that the crèche was prohibited from City property "because it's religious"); Cocco Decl. ¶¶ 22–23 & Ex. A (photographs of the Chamber's Santa's House on the Boardwalk during the 2019 holiday season).

[7] For all of the reasons discussed in the Knights' Opening Brief with respect to the no-religious-displays policy, the 2020 Policy would cause the Knights to suffer irreparable harm, the public interest favors an injunction as to the 2020 Policy, and the balance of hardships weighs in favor of an order enjoining the 2020 Policy. *See* Pl.'s Br. at 18–20.

*Reed*, 576 U.S. at 163.   It "defin[es] regulated speech by particular subject matter" or "by its function or purpose." *Reed*, 576 U.S. at 163.   There can be no doubt that the City's 2020 Policy is content-based.

The 2020 Policy, by its terms, prohibits the "private display" on "any City property" of "any . . . symbol[s]" or "object[s]" "associated with or intended to relate to the holiday season." Lynn Decl. Ex. A.   Its restrictions are based on what a particular symbol or object may express— or may be intended to express—through association or otherwise.   A display conveying a message about Christmas "[is] treated differently from [a display] conveying other types of ideas." *Reed*, 576 U.S. at 164.   The 2020 Policy is therefore, on its face, a textbook content-based regulation of speech.

Defendants rely on two cases from other circuits to support their argument that the 2020 Policy is content neutral.   Both cases, however, serve only to underscore the unlawfulness of the 2020 Policy.   In *Santa Monica Nativity Scenes Committee v. City of Santa Monica*, the City ordinance at issue "ban[ned] *all* unattended displays in [a public] Park.   It d[id] not discriminate between particular displays based on their content."   784 F.3d 1286, 1292 (9th Cir. 2015) (emphasis added).   Similarly, in *Knights of Columbus, Council #94 v. Town of Lexington*, the town prohibited "placement on [public property] of *any* unattended structure."   272 F.3d 25, 30 (1st Cir. 2001) (emphasis added).   As the First Circuit explained, "[t]he ban on unattended structures [wa]s comprehensive; it d[id] not discriminate among types of unattended structures." *Id.* at 31.   Not so here.   The 2020 Policy explicitly targets only those private displays with content associated with or intended to relate to the "holiday season," or November 15–January 15.   For example, it permits a display on the Boardwalk to sell Girl Scout cookies during the "holiday season," but prohibits a

display on the Boardwalk to sell *Christmas* cookies during the same time period.  Whatever else the 2020 Policy may be, it is not content neutral.

The 2020 Policy forbids "holiday displays" on any City property.  This includes public "parks, streets, sidewalks, [boardwalks,] and the like," which are "traditional public forums" for purposes of free speech activity.  *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018).  In these forums, content-based restrictions like the 2020 Policy "must satisfy strict scrutiny," *id.*, which requires Defendants to show that the policy "(1) serve[s] a compelling governmental interest; (2) [is] narrowly tailored to achieve that interest; and (3) [is] the least restrictive means of advancing that interest."  *United States v. Marcavage*, 609 F.3d 264, 286 (3d Cir. 2010).  Defendants cannot meet this burden.

A compelling government interest is an interest "of the highest order," an "overriding state interest," *id.* at 287 (citing cases), such as "protecting the physical and psychological well-being of minors," *ACLU v. Mukasey*, 534 F.3d 181, 190 (3d Cir. 2008), or "preserving the secrecy of grand jury proceedings."  *In re Subpoena 2018R00776*, 947 F.3d 148, 156 (3d Cir. 2020).  Defendants assert, for the first time in their Opposition, that the 2020 Policy's purpose is to "preserve the aesthetics of its Bandstand and Boardwalk, and limit the impact on the Bandstand and Boardwalk from multiple private displays."  Defs.' Opp'n at 15.  Defendants admit these interests are merely "legitimate," *id.*, and unsurprisingly fail to justify them as compelling.  Aesthetics and impact on a bandstand or boardwalk are hardly interests of the highest order.  *See, e.g., Dimmitt v. Clearwater*, 985 F.2d 1565, 1570 (11th Cir. 1993) (finding "aesthetics and traffic safety" inadequate interests to justify a content-based restriction regarding flag displays).  Devoid of a compelling government interest, the 2020 Policy is unlawful.

Even if Defendants' interests were compelling, the 2020 Policy "is not narrowly tailored because it is both overinclusive and underinclusive." *Mukasey*, 534 F.3d at 193. The 2020 Policy is overinclusive because it suppresses far more speech than is necessary to achieve the City's stated goals. *See id.* at 206. For example, because the policy defines "holiday season" as "[t]he period of time that runs from November 15 through January 15 in any given year," and "holiday display" as "[a]ny symbol, statute [sic], [or] object . . . which [is] associated with or intended to relate to" that period of time, a private calendar showing any dates from November 15 through January 15 constitutes a "holiday display." Lynn Decl. Ex. A. By its plain terms, then, the 2020 Policy prohibits an individual from entering *any* City property while holding a calendar. It also prohibits a child from walking down a public sidewalk with a picture of Santa Claus, a woman from driving down Rehoboth Avenue with a Thanksgiving bumper sticker on her car, and a Jew from visiting city hall with a menorah. It would even prevent an individual from walking down the Boardwalk with a bouquet of roses or balloons intended to celebrate a birthday or anniversary that falls between November 15 and January 15. In addition to being patently absurd, these prohibitions suppress far more speech than necessary to further the City's goals for the Bandstand and the Boardwalk. The 2020 Policy is grossly overinclusive.

The 2020 Policy is also grossly underinclusive because it prohibits too little speech to achieve Defendants' stated goals. *See Reed*, 576 U.S. at 172 ("[A] law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited."); *see also United States v. Stevens*, 533 F.3d 218, 233 (3d Cir. 2008) (en banc), *aff'd* 559 U.S. 460 (2010). The 2020 Policy prohibits, *inter alia*, displays regarding holidays between November 15 and January 15, such as Thanksgiving, Hanukah, and Christmas, but it permits displays related to holidays between

8

January 16 and November 14, including Easter, Passover, Ramadan, Memorial Day, the Fourth of July, Labor Day, and Halloween.  Christmas, Thanksgiving, and Hanukah displays, however, are "no greater an eyesore," than displays regarding other holidays.  *Reed*, 576 U.S. at 172.  The 2020 Policy also allows "unlimited proliferation" of private displays unrelated to the "holiday season," such as commercial displays, art exhibits, or political displays.  *Id.*  For example, it permits a "Blue Hen" display on the Boardwalk promoting a Delaware football game, but prohibits a Thanksgiving turkey display promoting a food drive.  The 2020 Policy's underinclusiveness is clear.

Even if the policy were narrowly tailored, it fails the least restrictive means requirement.  "[T]here were other ways [Defendants] could have attained [their] objectives that would have been at least as effective."  *Marcavage*, 609 F.3d at 290 (quotations omitted).  The most obvious alternative is a lawful time, place, or manner restriction[8] that applies to any display, which could limit the number of displays allowed as well as their size and location at the Bandstand/Boardwalk Circle.  But prohibiting *any* symbol associated with November 15–January 15 *anywhere* on City property is far more restrictive than necessary for aesthetics and impact reduction on the Bandstand and Boardwalk.

### B.      The 2020 Policy Is Incapable Of Reasoned Application.

Although the 2020 Policy fails strict scrutiny, the Court need not "wad[e] into" that analysis to hold the policy unlawful.  *Ctr. for Investigative Reporting v. Se. Pa Transp. Auth.*, 975 F.3d 300, 314 (3d Cir. 2020).  It is "a baseline requirement that all forms of content-based restrictions must be capable of reasoned application."  *Id.* at 313–14.  The policy fails even this standard because, among other flaws, it is impermissibly vague—"[t]he lack of structure and clear

---

[8] The 2020 Policy also fails as a time, place, or manner restriction on speech.  Such restrictions must be "content neutral" and "narrowly tailored to serve a significant governmental interest, and leave open ample alternatives for communication."  *Marcavage*, 609 at 279.  The policy is neither content neutral nor narrowly tailored, *see supra* at 5–9, and, by banning all "holiday displays" from City property, certainly fails to leave ample alternatives for them.

policies governing the decision-making process creates a real risk that it may be arbitrarily applied." *Id.* at 317.  The 2020 Policy's vagueness is most pronounced in its prohibition on private displays "associated with or intended to relate to" the holiday season.  Lynn Decl. Ex. A.  The policy itself contains no hint of what it means for a display to be "associated with or intended to relate to" the holiday season, *id.*, and the City has provided no guidance regarding how it plans to determine either association or a speaker's intent when assessing a display.  For example, the 2020 Policy would prohibit a bearded man clad in a red suit from walking down Rehoboth Avenue if he intended to portray Santa Claus, but would permit him to do so if his resemblance to St. Nick were a mere sartorial coincidence.  How the City would ascertain such an individual's intent, however, is anyone's guess.  Without some "objective, workable standards" to guide City officials' discretion in enforcing the policy, the "indeterminate prohibition" on displays associated with or intended to relate to the holiday season "carries with it [t]he opportunity for abuse." *Mansky*, 138 S. Ct. at 1891 (quotations omitted).  The 2020 Policy is thus incapable of reasoned application.[9]

## CONCLUSION

For the foregoing reasons, the Knights respectfully requests that this Court grant its Motion for a Preliminary Injunction.

---

[9] The 2020 Policy also fails to pass constitutional muster because it is overbroad.  "[A] law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Bruni v. City of Pittsburgh*, 824 F.3d 353, 374 (3d Cir. 2016) (quotations omitted).  The 2020 Policy unquestionably restricts political speech, which is "at the core of what the First Amendment is designed to protect." *Morse v. Frederick*, 551 U.S. 393, 403 (2007) (quotations omitted).  If, for example, Rehoboth Beach residents wish to protest Delaware's latest Covid-19 restrictions, which limit indoor gatherings in homes to no more than ten people, the 2020 Policy would prohibit them from doing so if they hold a sign referencing Thanksgiving gatherings.  *See Governor Carney Announces Additional COVID-19 Restrictions* (Nov. 17, 2020), https://news.delaware.gov/2020/11/17/governor-carney-announces-additional-covid-19-restrictions/.  Thus, regardless of whether there may be some constitutionally permissible applications of the 2020 Policy, the policy is overbroad because it prohibits "a substantial amount of protected expressive activity." *United States v. Williams*, 553 U.S. 285, 293 (2008)).

November 23, 2020

Respectfully submitted,
/s/ *Michael P. Morton*
Michael P. Morton (Bar ID # 002492)
Robert J. Valihura, Jr. (Bar ID # 02638)
David C. Zerbato (Bar ID # 005671)
MORTON, VALIHURA & ZERBATO, LLC
3704 Kennett Pike, Suite 200
Greenville Professional Building
Greenville, DE 19807
Telephone: (302) 426-1313
Fax: (302) 426-1300
mmorton@mvzllc.com

Christopher DiPompeo (*pro hac vice*)
Kaytlin L. Roholt (*pro hac vice*)
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001-2113
Telephone:  (202) 879-7686
Fax:  (202) 626-1700
cdipompeo@jonesday.com
kroholtlane@jonesday.com

Roger Byron (*pro hac vice*)
FIRST LIBERTY INSTITUTE
2001 Plano Parkway, Suite 1600
Plano, TX 75075
Telephone: (972) 941-4444
Fax: (972) 941-4457
rbyron@libertyinstitute.org

*Counsel for Plaintiff Knights of Columbus Star of the Sea Council 7297*

11