IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KNIGHTS OF COLUMBUS STAR OF THE SEA COUNCIL 7297,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY OF REHOBOTH BEACH, DELAWARE;<br><br>STAN MILLS, in his official capacity as Mayor of Rehoboth Beach, Delaware;<br><br>PAUL KUHNS, individually;<br><br>SHARON LYNN, individually and in her official capacity as City Manager of Rehoboth Beach, Delaware;<br><br>　　　　Defendants. | Civil Case No. 1:20-cv-00841-LPS |

### **DEFENDANTS' SUR-REPLY BRIEF**

Daniel A. Griffith, Esq. (Bar No. 4209)
Whiteford Taylor & Preston LLC
The Renaissance Centre
405 N. King Street, Suite 500
Wilmington, DE 19801
Telephone:  (302) 357-3254
Facsimile:  (302) 357-3274
dgriffith@wtplaw.com


December 1, 2020

Max B. Walton (Bar No. 3876)
Lisa R. Hatfield (Bar No. 4967)
Brandon R. Harper (Bar No. 6418)
Connolly Gallagher LLP
267 East Main Street
Newark, DE 19711
(302) 757-7300
mwalton@connollygallagher.com
lhatfield@connollygallagher.com
bharper@connollygallagher.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

      A.     Plaintiff's Claims Are Not Ripe ............................................................................... 3

      B.     The City's Policy Is Content Neutral ..................................................................... 4

      C.     The Proposed Policy Revision ............................................................................... 5

      D.     Plaintiff's Motion For A Preliminary Injunction Fails On Numerous Fronts. ...................................................................................................................... 6

            1.     The Time Place and Manner ...................................................................... 6

            2.     The Significant Governmental Interest ...................................................... 7

            3.     Narrow Tailoring ........................................................................................ 8

            4.     Alternative Avenues of Communication Remain ..................................... 9

CONCLUSION ............................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Labs. v. Gardner*,
   387 U.S. 136 (1967), *overruled on other grounds, Califano v. Sanders*, 430
   U.S. 99 (1977) ...................................................................................................................... 3

*Adderley v. Florida*,
   385 U.S. 39 (1966) ................................................................................................................ 1

*Am. Jewish Cong. v. City of Beverly Hills*,
   90 F.3d 379 (9th Cir. 1996) .................................................................................................. 8

*Americans United for Separation of Church and State v. City of Grand Rapids*,
   980 F.2d 1538, 1554 (6th Cir. 1992) .................................................................................... 1

*Antietam Battlefield KOA v. Hogan*,
   461 F. Supp.2d 214 (D. Md. 2020) ....................................................................................... 7

*Capitol Square Review & Advisory Bd. v. Pinette*,
   515 U.S. 753 (1995) ........................................................................................................... 1, 8

*City Council of Los Angeles v. Taxpayers for Vincent*,
   466 U.S. 789 (1984) .............................................................................................................. 9

*Congregation Anshei Roosevelt v. Planning & Zoning Bd.*,
   338 F. App'x 214 (3d Cir. 2009) .......................................................................................... 3

*E & R Enterprises, LLC v. City of Rehoboth Beach, Delaware*,
   650 F. App'x 811 (3d Cir. 2016) .......................................................................................... 3

*Glen Allen Farm, LLC v. New Castle Cnty.*,
   C.A. No. 2019-0424-PAF, 2020 WL 5800714 (Del. Ch. Sept. 29, 2020) ............................. 4

*Globe Newspaper Co. v. Beacon Hill Architectural Com.*,
   100 F.3d 175 (1st Cir. 1996) ............................................................................................ 7, 8

*Graff v. City of Chicago*,
   9 F.3d 1309 (7th Cir. 1993) ............................................................................................... 1, 8

*Knights of Columbus, Council #94 v. Town of Lexington*,
   272 F.3d 25 (1st Cir. 2001) ............................................................................................... 6, 8

*Lubavitch Chabad House, Inc. v. City of Chicago*,
   917 F.2d 341 (7th Cir. 1990) ................................................................................................ 1

*Minnesota Voters All. v. Mansky*,
  138 S. Ct. 1876 (2018)......................................................................................................6

*New Jersey Chinese Community Center v. Twp. of Warren*,
  712 F. App'x 196 (3d Cir. 2017) ......................................................................................3

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
  460 U.S. 37 (1983).............................................................................................................6

*Sameric Corp. of Del., Inc. v. City of Phila.*,
  142 F.3d 582 (3d Cir. 1998)..............................................................................................3

*Santa Monica Nativity Scenes Com. v. City of Santa Monica*,
  784 F.3d 1286 (9th Cir. 2015) ..................................................................................1, 6, 8

*Signs for Jesus v. Town of Pembroke*,
  230 F.Supp.3d 49 (D. N.H. 2017).....................................................................................7

*Taylor Inv., Ltd v. Upper Darby Twp.*,
  983 F.2d 1285 (3d Cir. 1993)............................................................................................3

*U.S. v. Grace*,
  461 U.S. 171 (1983)...........................................................................................................1

*Ward v. Rock Against Racism*,
  491 U.S.781 (1989)............................................................................................................8

**Statutes**

Rehoboth Beach Code § 230-12 ..................................................................................................4

**Other Authorities**

Local Rule 7.1.3 .......................................................................................................................4, 5

## INTRODUCTION

Plaintiff has no right to place a structure on public property. *Graff v. City of Chicago,* 9 F.3d 1309, 1314 (7th Cir. 1993) ("no person has a constitutional right to erect or maintain a structure on the public way."); *Lubavitch Chabad House, Inc. v. City of Chicago*, 917 F.2d 341, 347 (7th Cir. 1990) (holding that there is no "private constitutional right to erect a structure on public property. If there were, our traditional public forums, such as our public parks, would be cluttered with all manner of structures. Public parks are certainly quintessential public forums where free speech is protected, but the Constitution neither provides, nor has it ever been construed to mandate, that any person or group be allowed to erect structures at will.").

Because no such right exists, the City, as it has done here, may altogether preclude persons from erecting unattended displays on public property – and such is a valid time, place, and manner restriction on speech. *Santa Monica Nativity Scenes Com. v. City of Santa Monica,* 784 F.3d 1286, 1292 (9th Cir. 2015) (citing *Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 761 (1995)) ("Both this court and the Supreme Court have indicated, moreover, that a content-neutral ban on all private unattended displays in a city's parks is very likely to be a legitimate time, place, and manner regulation."); *Americans United for Separation of Church and State v. City of Grand Rapids,* 980 F.2d 1538, 1554 (6th Cir. 1992) (citing cases) ("Grand Rapids could, if it chose, probably limit the height or length of time of displays or rallies, or even ban all unattended displays, if done evenhandedly.").  Plaintiff cannot force the City to accede to its desire to place *its* crèche (an unattended display) on the Bandstand/Boardwalk area where the City is placing its holiday display (which, ironically, contains a crèche). "Government, 'no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated.'" *U.S. v. Grace,* 461 U.S. 171, 178 (1983) (quoting *Adderley v. Florida,* 385 U.S. 39, 47 (1966)).

Recognizing that the City may ban all unattended displays, Plaintiffs use their reply brief to (for the first time) attack the City's 2020 Policy (adopted November 5, 2020), claiming that it is content based. While this is certainly disputed, it was never the City's intent to create any content-based classifications – and the 2020 Policy should not be read as a content-based restriction. The purpose is to ban all private unattended displays and nothing more. *See* AB 12.[1] To the extent any ambiguity in the 2020 Policy exists, the City Commissioners will consider an amendment to the City's 2020 Policy at the Commissioners' meeting on December 7, 2020. A copy of the policy revision and proposed resolution is attached hereto as Exhibit A ("2020 Revision").[2] The 2020 Revision, if approved, should remove any question regarding the City's intent and the meaning of the policy – it seeks to ban private, unattended displays on City property during a pandemic for public safety, aesthetic and other reasons discussed herein.

In light of the intent of the initial 2020 Policy, and in light of the clarifying revisions under consideration, the City has a valid, content-neutral policy for private unattended displays on City property. This is a permissible time, place, and manner restriction – which, just as other Courts have held, is a legitimate exercise of the City's authority to regulate its own property. Plaintiffs' preliminary injunction should be denied.[3]

---

[1] The City's answering brief is cited herein as "AB __." Plaintiff's reply brief is cited herein as "RB __."

[2] The meeting agenda and supporting documents are located on the City's website. https://cityofrehoboth.civicweb.net/document/59012.

[3] Plaintiffs ask the City to disavow what it terms a no-religious-displays policy. RB 4. One cannot disavow a policy that does not exist. The 2020 Policy is that there can be no unattended displays or structures on City property. Contrary to Plaintiff's contentions (RB 4-5), the City has not waived any arguments relating to the City's actions in 2018 and 2019. AB 4, n.5.

**ARGUMENT**

    A.    **Plaintiff's Claims Are Not Ripe.**

For the first time in Plaintiff's reply brief, it makes claims relating to the City's 2020 Policy. These newly minted claims relating to the 2020 Policy should be dismissed because they are not ripe – Plaintiff has never sought a permit for its intended display prior to seeking an injunction or thereafter.

"Ripeness is a jurisdictional inquiry, rooted in both the case or controversy requirement of our Constitution's Article III and judge-made prudential limitations on the exercise of judicial authority." *Congregation Anshei Roosevelt v. Planning & Zoning Bd.,* 338 F. App'x 214, 216 (3d Cir. 2009). If the case is not ripe, the Court lacks jurisdiction to hear the case. *E & R Enterprises, LLC v. City of Rehoboth Beach, Delaware*, 650 F. App'x 811, 815-16 (3d Cir. 2016).

The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements...." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977). A claim is not ripe until the government entity has had an opportunity to render a final dispositive position on the application in question. *Sameric Corp. of Del., Inc. v. City of Phila.,* 142 F.3d 582, 597 (3d Cir. 1998) (citing *Taylor Inv., Ltd v. Upper Darby Twp.*, 983 F.2d 1285, 1291 (3d Cir. 1993)). It is well-settled that Constitutional claims are not properly before the Court when permits are denied "by the initial decision-makers but [the applicants] do not avail themselves of available, subsequent procedures." *New Jersey Chinese Community Center v. Twp. of Warren*, 712 F. App'x 196, 199 (3d Cir. 2017).

Here, Plaintiff's claims are not ripe because they do not allege that they applied for a permit from the City – a code requirement for expressive activity. *See* Rehoboth Beach Code § 230-12. If the permit is denied by the City Manager, there is an expedited administrative appeal set forth in the statute. Because Plaintiff has never filed any application for its intended display, and certainly never exhausted any administrative appeals, no final decision has been made on Plaintiff's intended display. If the appropriate permit application had been filed, the City would have been provided the opportunity to address the arguments now made – for the first time in the reply brief – regarding the 2020 Policy as a component of its permit review.[4] But the claim cannot be ripe when Plaintiff never even bothered to apply for the required permit. *See Glen Allen Farm, LLC v. New Castle Cnty.,* C.A. No. 2019-0424-PAF, 2020 WL 5800714, at *7 (Del. Ch. Sept. 29, 2020) (when the Petitioner failed to initiate the administrative review process, its constitutional and other claims were not ripe).

B.  **The City's Policy Is Content Neutral**

The 2020 Policy defines a holiday display as "[a]ny symbol, statute [sic], object or any combination or group of the same which are associated with or intend to relate to the *holiday season.*" (emphasis supplied). *Holiday season* is defined as the period of time that runs from November 15 to January 15. Thus, any private unattended display relating to the time period of November 15 to January 15 is banned – regardless of the content of the message. The intent of the policy, in the City's view, is clear – all unattended displays are not permitted on City property. No one, other than the City, is permitted to erect an unattended display on the Boardwalk, the Bandstand or other City property – and other forms of speech are not limited or

---

[4] Plaintiff's reply brief for the first time raises arguments concerning the City's 2020 Policy in violation of the local rules. *See* Local Rule 7.1.3 ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.")

4

curtailed. Plaintiff's attempt to distort the intent and meaning of the 2020 Policy should be rejected because the 2020 Policy does not suffer from the infirmities that Plaintiff asserts when read in concert with the definitions in the policy.

Plaintiff desires that it be permitted to "display a[n unattended] crèche *at the Bandstand/Boardwalk* Circle *during the Christmas holiday* season as Defendants provide any other private person, group, organization and/or entity for any other display." RB 2. The City's 2020 Policy does exactly this – it treats every private group that seeks to place an unattended display on City property the same. Unattended displays are permitted on private property, but unattended displays are not permitted on City property. The City has not given permission for any group, organization, or person to erect any unattended display whatsoever since the 2020 Policy was adopted, and no actual different treatment is alleged. Certainly the intent of the 2020 Policy (*see* 2020 Policy, Article III, Paragraph 3 discussing removal of an erected display), and the City's view regarding enforcement of the policy, is a ban on unattended displays on City property by any private party for a limited time period. That is precisely what the City represented to the Court in its answering brief. AB 13.

      **C.    The Proposed Policy Revision**

In its newly minted for the reply brief argument, Plaintiff makes three primary claims to challenge the 2020 Policy. The Knights claim, incorrectly, that: (1) the policy is content based; (2) the policy is overinclusive and underinclusive; and (3) it is vague. These issues were never raised to the City by the Plaintiff before the reply brief was filed. Plaintiff instead sought to engage in "gotcha" tactics – in violation of Local Rule 7.1.3.

To the extent there is any ambiguity in the 2020 Policy, the City is in the process of clarifying and revising it. The 2020 Revision proposes to change the 2020 Policy in three primary respects. First, it clarifies that only unattended displays on City property are disallowed.

5

Second, it removes the time limitation for unattended displays – making the policy effective year round. Third, it clarifies the meaning of unattended displays and removes the use of the word "holiday." These clarifying revisions will be considered and voted upon by the City Commissioners on December 7.[5] These revisions, if adopted, resolve Plaintiff's objections (valid or not) to the 2020 Policy. Counsel for the City will be in a position to advise the Court on the status of the 2020 Revision at the time of oral argument on December 8.

### D. Plaintiff's Motion For A Preliminary Injunction Fails On Numerous Fronts.

"In a traditional public forum . . . the government may impose reasonable time, place, and manner restrictions on private speech, but restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited." *Minnesota Voters All. v. Mansky,* 138 S. Ct. 1876, 1885 (2018). However, where, as here, the restriction is not content based, then it can qualify as a permissible time, place, and manner restriction so long as it is also "narrowly tailored to serve a significant government interest, and leaves open ample alternative channels of communication." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45 (1983).

#### 1. The Time Place and Manner

The City may, as a legitimate time, place, and manner restriction, ban all unattended displays on public property. *Knights of Columbus, Council #94 v. Town of Lexington*, 272 F.3d 25, 35 (1st Cir. 2001); *Santa Monica Nativity Scenes,* 784 F.3d at 1292; *see also* RB 6. The 2020 Policy and the 2020 Revision are time, place, and manner restrictions. The limitations imposed by both are intended to apply only to unattended displays and the 2020 Revision makes this crystal clear. The limitation does not ban any other type of speech or expressive activity – it is

---

[5] Just as the City's answering brief states (AB 9), if the City were to consider changing its policy, such action would be taken at a public meeting where the Knights and the public could participate.

narrowly tailored to prevent placing unattended displays on public property in a small beach community and nothing more. The 2020 Policy and the 2020 Revision do not differentiate based upon content – all private parties are treated the same – regardless of the content of the message. There is no content-based regulation imposed by the City.

### 2. The Significant Governmental Interest

As noted in the proposed resolution for the 2020 Revision, the City cites three primary justifications for the adoption of the revisions that establish a significant governmental interest. The first is aesthetics of the City and the logistical burdens imposed by unattended private displays. Contrary to Plaintiff's contentions (RB 7), "there is abundant authority for the proposition that aesthetic interests constitute a significant government interest justifying content neutral, narrowly tailored regulations of a public forum that leave open ample alternative channels." *Globe Newspaper Co. v. Beacon Hill Architectural Com*., 100 F.3d 175, 187 (1st Cir. 1996) (citing cases); *Signs for Jesus v. Town of Pembroke*, 230 F.Supp.3d 49, 60-61 (D. N.H. 2017). Aesthetics therefore constitutes a viable significant governmental interest.

The second justification for the proposed 2020 Revision relates to the COVID-19 pandemic. The City desires to avoid the crowding of parks and places which may unnecessarily draw people to the displays.[6] Concerns relating to reducing the spread of the COVID-19 pandemic certainly establish "a legitimate and substantial government interest." *Antietam Battlefield KOA v. Hogan,* 461 F. Supp.2d 214, 235 (D. Md. 2020).

Third, as noted in the City's answering brief, one of the concerns of the City in prior years was that, by allowing just a crèche on the Bandstand without other religious symbols being displayed it could be deemed an unconstitutional endorsement of religion because the

---

[6] In 2020, for example, the traditional lighting of the Rehoboth Beach Christmas tree was done without an audience for this very concern.

Establishment Clause prohibits the government from appearing to take a position on religious beliefs. AB 2, n.3. If the Knights' crèche is the only unattended display on the Bandstand/Boardwalk in 2020, such allowance could certainly raise the specter of an Establishment Clause violation. As the Supreme Court has held, "[t]here is no doubt that compliance with the Establishment Clause is a state interest sufficiently compelling to [even] justify content-based restrictions on speech." *Capitol Square,* 515 U.S. at 761. Certainly, therefore, Establishment Clause compliance constitutes a significant governmental interest for a content-neutral time, place, and manner restriction on unattended displays.

        3.        Narrow Tailoring

"A time, place, and manner regulation 'need not be the least restrictive or least intrusive means' of furthering the government's interests in order to be narrowly tailored." *Santa Monica Nativity Scene Committee*, 784 F.3d at 1297 (quoting *Ward v. Rock Against Racism,* 491 U.S.781, 798 (1989)). A regulation is narrowly tailored as long as the particular regulation "promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* The City's policy will not be invalid simply because one could conclude "that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward,* 491 U.S. at 800.

Here, the City's policy is narrowly tailored – it relates to unattended displays on City property – something that Plaintiff has no right to erect. *Graff,* 9 F.3d at 1314. The policy is justified for aesthetic, COVID-19 and Establishment Clause related concerns. Prohibiting unattended displays on public property has been consistently held to be content neutral and narrowly-tailored. *Knights of Columbus Council No. 94*, 272 F.3d at 33; *Santa Monica Nativity Scenes,* 784 F.3d at 1292; *Globe Newspaper Co.*, 100 F.3d at 188; *Am. Jewish Cong. v. City of Beverly Hills*, 90 F.3d 379, 384 (9th Cir. 1996) ("The city constitutionally could ban all

unattended private displays in its parks."); *see also City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808-810 (1984) (upholding an ordinance that banned all signs on public property because the interest supporting the regulation, an aesthetic interest in avoiding visual clutter and blight, rendered each sign an evil). Contrary to what Plaintiff contends (RB 9), the government policy need not be the least restrictive alternative – it only needs to be narrowly tailored. Restricting unattended displays in the few limited public parks and City property in a small beach town such as Rehoboth Beach certainly satisfies the narrow-tailoring requirement for a content-neutral time, place, and manner restriction.

4.       Alternative Avenues of Communication Remain

Plaintiffs have alternate means of communication. They are not banned from having an attended display under the 2020 Policy or the 2020 Revision, nor are they precluded from carrying on their message by other lawful means. They can place their unattended display structure on private property – they just cannot place it on public property. But all other lawful means of communication remain and can be exercised in the public forum. The restriction here is a narrow one – it relates only to unattended displays on public property.

**CONCLUSION**

The Knights claim they have a simple request – to "be permitted to erect a display on the same terms as other private groups and individuals." RB 2. The 2020 Policy intended to, and the 2020 Revision confirms, that this is exactly what the City wants as well. The City desires to treat all speakers the same – and it has. No private unattended displays are allowed, but other lawful means of expression (and attended displays) are permitted. No permit has been issued for any private unattended display by the City. To the extent the 2020 Policy is not as crystal clear as Plaintiff's desire, the City will consider adoption of the 2020 Revision on December 7 – and

9

any and all doubts should be resolved if the 2020 Revision is adopted.[7]  As courts have repeatedly held, bans on unattended displays are valid, content-neutral, time, place and manner restrictions.  The same restrictions should be upheld here as a valid governmental policy.

Although Plaintiff purports to want to be treated the same as other private groups, it wants to erect a crèche at the Boardwalk/Bandstand area – in the exact location where the City is placing a new display this year.  The City, as the owner of the property, certainly has the right to place its own display on its own property and is not required to allow Plaintiff to erect a display structure in the location where the City's display is located.  The City's display celebrates the cultural diversity of the City, and includes as a component of its diverse display, a crèche.  Under the circumstances, Plaintiff's overarching contention that the City is anti-religion, or has an anti-religion policy, lacks merit.

The City requests that Plaintiff's motion for preliminary injunction be denied.

Respectfully submitted,

**CONNOLLY GALLAGHER LLP**

/s/ Max B. Walton
Max B. Walton (Bar No. 3876)
Lisa R. Hatfield (Bar No. 4967)
Brandon R. Harper (Bar No. 6418)
267 East Main Street
Newark, DE 19711
(302) 757-7300
mwalton@connollygallagher.com
lhatfield@connollygallagher.com
bharper@connollygallagher.com

-and-

---

[7]  As the 2020 Revision addresses issues raised for the first time in the reply brief, upon adoption, Plaintiff's claims are rendered moot.

10

**WHITEFORD TAYLOR & PRESTON LLC**

*/s/ Daniel A. Griffith*
Daniel A. Griffith, Esq. (Bar No. 4209)
The Renaissance Centre
405 N. King Street, Suite 500
Wilmington, DE 19801
Telephone:  (302) 357-3254
Facsimile:  (302) 357-3274
dgriffith@wtplaw.com

*Attorneys for Defendants*

Dated: December 1, 2020