IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| KNIGHTS OF COLUMBUS STAR OF THE SEA COUNCIL 7297, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 20-841-LPS |
| | : | |
| CITY OF REHOBOTH BEACH, DELAWARE; STAN MILLS, in his official capacity as Mayor of Rehoboth Beach, Delaware; PAUL KUHNS, individually; and SHARON LYNN, individually and in her official capacity as City Manager of Rehoboth Beach, Delaware; | : | |
| | : | |
| Defendants. | : | |

Michael P. Morton, Robert J. Valihura, Jr., and David C. Zerbato, MORTON, VALIHURA & ZERBATO, LLC, Greenville, Delaware

Christopher DiPompeo and Kaytlin L. Roholt, JONES DAY, Washington, DC

Roger Byron, FIRST LIBERTY INSTITUTE, Plano, Texas

 Attorneys for Plaintiff

Max B. Walton, Lisa R. Hatfield, and Brandon R. Harper, CONNOLLY GALLAGHER LLP, Newark, Delaware

Daniel A. Griffith, WHITEFORD TAYLOR & PRESTON LLC, Wilmington, Delaware

 Attorneys for Defendants

**MEMORANDUM OPINION**

December 11, 2020
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

On November 2, 2020, Plaintiff Knights of Columbus Star of the Sea Council 7297 ("Plaintiff" or the "Knights") filed a Motion for a Preliminary Injunction (D.I. 14), having initiated this case on June 23, 2020 (*see* D.I. 1). On November 25, 2020, in response to the Court's inquiry,[1] Plaintiff requested expedited review of its motion. (*See* D.I. 19) ("[T]he Knights believe[s] that this Court's expedited review is necessary to secure and protect its First Amendment rights before yet another Christmas season passes without relief.") Defendants City of Rehoboth Beach, Delaware (the "City of Rehoboth"), Stan Mills ("Mills"), Paul Kuhns ("Kuhns"), and Sharon Lynn ("Lynn" and, together with City of Rehoboth, Mills, and Kuhns, "Defendants" or the "City") did not oppose Plaintiff's request for expedited review.

The Court held a teleconference on December 8, 2020 to hear argument from the parties. Having reviewed the parties' briefing (D.I. 15, 16, 17, 21) and the additional materials the parties have put in the record (*see* D.I. 15 Exs. 1-11; D.I. 16 Exs. 1-5; D.I. 21 Ex. 1), having heard oral argument, and having moved expeditiously to consider Plaintiff's request for extraordinary relief in light of the circumstances, the Court will deny Plaintiff's motion (D.I. 14).

---

[1] The far preferable practice is for the party or parties believing a motion merits expedited review to file a motion for such treatment, accompanied by a cover letter notifying the Court of the request for expedited review. In the absence of such a motion, there is always a possibility that the Court will not recognize the need to make any particular motion a priority (and may not even notice that the motion has been filed). As of this week, the undersigned Judge's docket consists of 590 civil cases, 38 criminal cases, and 364 motions. Given the realities of this caseload, as well as the fact that not every preliminary injunction motion warrants expedited review (and not every party filing such a motion seems to want the Court to turn its immediate attention to it), litigants should not assume that this Court will automatically accord such treatment to a motion without a request to do so.

1

## II.   BACKGROUND

The Rehoboth Beach Bandstand and adjacent section of the Boardwalk (together, the "Bandstand") is a hub of community activity. (*See* D.I. 15 at 4-5) Owned by the City of Rehoboth, the Bandstand has long been the site of winter holiday traditions and displays. (*See id.*) In the past, these holiday displays have included a Christmas tree, holiday lights, a large Santa's House, and a crèche. (*See id.* at 5) In 2018, the Knights assumed the role of erecting the crèche, which Plaintiff alleges has been part of the holiday display since the 1930s. (*See id.* at 5-6) The Knights erected the crèche in the Bandstand area in early December of 2018; however, the City ordered the Knights to remove it. (*See id.* at 6) Plaintiff alleges that soon thereafter, Defendant Kuhns – who was then Mayor of Rehoboth – stated that "singular displays of this sort [referring to the crèche] are more appropriately placed on private property." (*Id.* at 7)

Plaintiff alleges that, during both the 2018 and 2019 winter holiday seasons, a Santa's House belonging to a secular private group was displayed in the Bandstand area. (*See id.* at 6-7) Hence, when requesting permission to erect a crèche in the Bandstand area in 2019, the Knights cited the other private group and sought what Plaintiff characterized as equal treatment. (*See id.* at 8) Nonetheless, the Knights' request was again denied, by City Manager Lynn. (*See id.*) Plaintiff emailed Lynn for clarification, asking: "The Knights can't put the crèche on the Boardwalk or other public property because it's religious. Is that right?" (*Id.*) Lynn responded, "[y]es correct."[2] (*Id.*) The City proposed an alternative location for the Knights to display the

---

[2] Defendants contend that Plaintiff's narrative is incomplete, adding that the City "strongly disputes many of [the] Knights' factual assertions regarding the City's purported 2018 and 2019 policies." (D.I. 16 at 2 n.3) As Defendants note, discovery will shed light on these factual disputes. (*Id.*)

2

crèche in 2019 – on a tract of private property about a half mile from the Bandstand – which the Knights declined. (*See id.* at 7)

Plaintiff alleges that the denials of its requests to display a crèche on the Rehoboth Bandstand in 2018 and 2019 were made pursuant to what the Knights describes as the City's "no-religious-displays policy." (*Id.* at 2) Plaintiff filed suit, and moved for a preliminary injunction, in part to prevent Defendants from adhering to this no-religious-displays policy during the holiday season of 2020.

Defendants' response to the motion begins with a contention that they have never had the purported no-religious-displays policy. (*See, e.g.*, D.I. 16 at 5) According to Defendants, there was no "official City policy regarding holiday displays" until November 5, 2020, when the City Commissioners for the first time approved a written, official policy (the "November 2020 Policy"). (*Id.*) The November 2020 Policy banned "all private holiday displays on City-owned property for the 2020 holiday season," a period defined as November 15 through January 15. (D.I. 16-4) In large part because of the Knights' criticism of the November 2020 Policy, the City approved a revised policy on December 7, 2020 (the "Revised Policy"), which was also the day before the Court heard argument on Plaintiff's motion. (*See* D.I. 21 at 5-6; D.I. 17 at 8-9; D.I. 23) The Revised Policy bans *all* unattended private displays on City-owned property (not just holiday displays) and applies year-round, not just during the previously-defined holiday season. (*See* D.I. 23-1) ("The City of Rehoboth Beach does not permit private Unattended Displays (e.g. non City owned, City leased, or City rented Unattended Displays) on any City Property.") Notably, the Revised Policy does not prohibit *attended* displays, only unattended displays.

Defendants insist that they will abide by the Revised Policy. (*See* Dec. 8, 2020 Hearing Transcript ("Tr.") at 45-46) Defendants also explain (and Plaintiff does not dispute) that around

3

December 1, 2020, the City erected its own display on the Bandstand, in order to celebrate "the cultural diversity of the City." (D.I. 21 at 10; *see also* Tr. at 39) This display includes a crèche, a menorah, a light-up snowman, a "Happy Kwanzaa" sign, and a sign celebrating the diversity of Rehoboth residents. (*See* D.I. 16-3 at 2; Tr. at 43)[3] This City display is expressly authorized by the Revised Policy. (*See* D.I. 23-1) ("The City of Rehoboth Beach may erect Unattended Displays on City Property. Unattended Displays on City Property must be erected and maintained by City personnel.")

### III. LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy" that should be granted only in "limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). This type of remedy is available only when the plaintiff establishes: (1) a likelihood of success on the merits; (2) irreparable harm if the injunction is denied; (3) the balance of the equities tips in the plaintiff's favor; and (4) the public interest favors the requested relief. *See id.* The first two factors – likelihood of success on the merits and irreparable harm – are "gateway factors." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). Unless the movant meets its burden on these two factors, a preliminary injunction is not warranted, regardless of whether the Court proceeds to consider the balance of equities and the public interest. *See id.*

The Third Circuit recently explained that a request for a preliminary injunction based on an alleged violation of a First Amendment right requires a slightly altered framework when considering the likelihood of success factor. *See id.* at 180. In such a situation, once a plaintiff establishes that the law or policy at issue restricts protected speech, the government then bears the burden to prove that the law is constitutional. *See id.* (explaining that "burdens at the

---

[3] Defendants point to this display as evidence that the City is not anti-religion. (*See* Tr. at 43)

4

preliminary injunction stage track the burdens at trial"); *see also Greater Phila. Chamber of Commerce v. City of Philadelphia*, 949 F.3d 116, 133 (3d Cir. 2020) ("In First Amendment cases the initial burden is flipped."). If the government succeeds in showing constitutionality under the appropriate level of scrutiny, "then the motion for a preliminary injunction fails because there is no likelihood of success on the merits." *Reilly*, 858 F.3d at 180 n.5. If the government fails, however, then the plaintiff "must be deemed likely to prevail" on the first factor. *Id.* at 180 (internal quotation marks omitted).

## IV.   DISCUSSION

The Knights' motion fails on multiple grounds. As an initial matter, because the motion is directed to a policy that no longer exists (if it ever did) and there is no realistic chance the alleged unconstitutional conduct will be resumed before the Court can reach the merits of the case, the motion must be denied as moot. It is also unripe. The Knights is free to apply to display an attended crèche, but it has not yet done so. Finally, even assuming the motion presents a non-moot, ripe issue, and further even assuming Plaintiff has established a likelihood of success on the merits, the motion must be denied because Plaintiff has failed to show it will suffer irreparable harm in the absence of preliminary injunctive relief. The Court elaborates on each of these conclusions below.

### A.   Mootness

As this case has evolved, so too has Defendants' policy regarding private displays on City property. Plaintiff alleges that in 2018 and 2019, Defendants denied the Knights' request to display a crèche on City property "because it is religious." (D.I. 15 at 8) In early November 2020, the City adopted (evidently for the first time) a written policy, one that Defendants characterize as a "general ban" on private holiday displays on City property during the 2020

5

holiday season. (*See* D.I. 16 at 8) According to Defendants, this November 2020 Policy is not anti-religious because it bans all private holiday-related unattended displays; for example, it prohibits both the Knights' desired (religious) crèche *and* the other private group's (secular) Santa's House. (*See id.* at 5 & n.8) When Plaintiff alleged that the November 2020 Policy, like the purported 2018 and 2019 no-religious-displays policy, violated Plaintiff's free speech and free exercise rights, Defendants modified their policy and, on December 7, adopted the Revised Policy. (*See* D.I. 17 at 8-9; D.I. 21 at 5-6) The Revised Policy is operative and governs Defendants' conduct today.

Defendants argue that their new policy moots Plaintiff's pending request for a preliminary injunction because the motion seeks relief based on the City's past policies.[4] (*See* D.I. 16 at 6-8) During the December 8 hearing, Plaintiff made clear that it is not (at least at this point) challenging the constitutionality of the Revised Policy. (Tr. at 24) Pointing out that the Court cannot enjoin past conduct, Defendants contend that the preliminary injunction motion must now be denied as moot. (D.I. 16 at 6-8)

In response, the Knights argues that the motion is not moot based on what the Knights contends is the proper application of the voluntary cessation exception to mootness. (*See* Tr. at 7-10; *see also United States v. Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004)) Under this well-recognized exception, courts are "reluctant to declare a case moot" when the defendant

---

[4] Defendants criticize Plaintiff for raising arguments challenging the November 2020 Policy for the first time in its reply brief, which Defendants suggest is a violation of the local rules. (*See* D.I. 21 at 4 n.4) (citing D. Del. LR 7.1.3(c)(2)) While it appears Plaintiff was aware of the *proposed* November 2020 Policy when Plaintiff filed its motion on November 2, that policy had not yet been adopted on November 2, so it is understandable that Plaintiff's opening brief did not attack the potential policy. Any prejudice this may have otherwise caused Defendants was fully cured by permitting Defendants to file a sur-reply brief and by hearing fully from both sides during oral argument.

voluntarily ceases the challenged conduct after litigation begins but still maintains the lawfulness of its past conduct. *See Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305-07 (3d Cir. 2020). Nevertheless, the voluntary cessation doctrine allows for the possibility of mootness. Specifically, if "subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," the challenge to voluntarily-ceased conduct is moot. *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 189 (2000).

A defendant seeking to avoid application of the voluntary cessation exception to mootness bears a "heavy" burden to demonstrate that it will not engage again in the challenged behavior. *Hartnett*, 963 F.3d at 305-06. In evaluating whether a defendant meets this burden, courts usually focus on two factors: timing and defense of past policies. *See, e.g., Virgin Islands*, 363 F.3d at 285. Considering these factors, the Court finds that Defendants here have met their heavy burden of demonstrating that the issues raised in the Knights' motion are moot.

With respect to timing, Plaintiff emphasizes the parallels to *United States v. Virgin Islands*, 363 F.3d at 284-85; *see also* Tr. at 7-8. There, the defendant voluntarily terminated a government contract that was the subject of a preliminary injunction motion just five days after the motion was filed, which was also two days before the scheduled hearing on the motion. *See Virgin Islands*, 363 F.3d at 284. In *Virgin Islands*, the defendant's sole justification for terminating the contract was that "such termination is in the best interest of the Government." *Id.* at 285. The court rejected the defendant's contention that the motion was moot, finding that this "extremely general" justification was insufficient to demonstrate that the termination had not been in response to the litigation; the court also lacked confidence that the defendant would not resume its wrongful behavior when the threat of litigation dissipated. *See id.*

While the timing here is similar, the context is materially different. The City adopted the November 2020 Policy just three days after Plaintiff filed its preliminary injunction motion and then adopted the Revised Policy just one day before the oral argument. However, unlike in *Virgin Islands*, Defendants have offered persuasive justification for the pace with which they have proceeded. For instance, Defendants had added the proposed November 2020 Policy to the City Commissioners' agenda *before* Plaintiff filed its motion, at a time when Defendants had no knowledge of Plaintiff's intent to file a preliminary injunction motion. (*See* D.I. 16 at 5; Tr. at 33) The present incumbent Commissioners are recently-elected and were sworn into office in September (*see* D.I. 16 at 5 & n.6; Tr. at 35); they appear to have acted as quickly as they reasonably could to draft, publish, and ultimately adopt the November 2020 Policy. That policy, then, was not adopted as a response to Plaintiff's motion.

The adoption of the Revised Policy does appear to have been motivated by a desire to moot the Knights' motion, but in a way that helps (rather than undermines) Defendants' effort to demonstrate mootness. Defendants admit that after they reviewed Plaintiff's attacks on the November 2020 Policy in Plaintiff's reply brief, they recognized the need to clarify that policy, in hopes of addressing all of Plaintiff's concerns. (D.I. 21 at 2; Tr. at 34) Defendants appear to have largely succeeded, as Plaintiff is not presently pressing any challenge to the Revised Policy. (*See* Tr. at 24) There is nothing suspicious about the timing of the adoption of the Revised Policy – it appears to have been drafted, added to the Commissioners' agenda, and publicly-approved at a Commissioners' meeting as quickly as possible after Defendants learned of Plaintiff's concerns about the November 2020 Policy. That the date of the adoption turned out to be just one day before the Court's hearing is the result of the expedited review the Court has

accorded Plaintiff's motion, as Plaintiff requested. It is hard to imagine a government body responding more quickly than Defendants did here to arguments raised in a reply brief.

Another factor driving the timing of all parties here, as well as the Court, is the beginning of the Advent season[5] and the fast-approaching holiday of Christmas. The Knights, quite reasonably, wants Defendants and the Court to make decisions relating to the 2020 holiday season before the 2020 holiday season is over, and Defendants and the Court have (in their own separate ways) worked expeditiously in response. No similar external time constraints and realities were present in *Virgin Islands*. Thus, again, the timing here supports a finding of mootness rather than a conclusion that the voluntary cessation exception should apply.

As for Defendants' defense of past practices, the Court finds that this factor, too, does not diminish Defendants' showing of mootness. Plaintiff has failed to show that the City is defending the purported no-religious-displays policy or the November 2020 Policy in a manner that gives rise to credible suspicions that Defendants intend to revert to their challenged practices after they defeat the pending motion.

The Third Circuit has held that a defendant's vigorous defense of a past policy may be suggestive of a plan to reinstate such a policy in the future. *See, e.g., Hartnett*, 963 F.3d at 306; *see also Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (finding voluntary cessation did not moot case where defendant "vigorously defend[ed] the constitutionality of its race-based program"). Thus, for example, in *DeJohn v. Temple*

---

[5] The Advent season marks the beginning of the Christian Church's liturgical year, and it lasts for four Sundays leading up to Christmas. *See Advent 2020*, U.S. Conf. of Cath. Bishops, https://www.usccb.org/prayer-and-worship/liturgical-year-and-calendar/advent. Advent 2020 began on November 29 and ends on December 24. *Id.* Plaintiff noted during oral argument that "we're already almost halfway through the Advent season, which is part of the time where the Knights would ask [for] a crèche." (Tr. at 21)

*University*, 537 F.3d 301, 310 (3d Cir. 2008), a defendant's voluntary cessation did not moot a case in which the defendant "defended and continue[d] to defend not only the constitutionality of its prior sexual harassment policy, but also the ***need*** for the former policy." Similarly, in *Hartnett v. Pennsylvania State Education Ass'n*, the court cited a Tenth Circuit case, in which the defendant had "'***forcefully maintained*** the constitutionality of the enjoined [policy]' and planned to reinstate it in the future." 963 F.3d at 306 (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1117 n.5 (10th Cir. 2012) (emphasis added)). *Hartnett* further stated that, "if the City's attitude had been different, the answer to the mootness question could well have differed too." *Id.*

The record here does not exhibit a vigorous defense by Defendants or any representation – or even suggestion – that Defendants believe any policy other than the operative Revised Policy is necessary or desirable. While Defendants do defend the constitutionality of the November 2020 Policy, they acknowledge the Court might reach a different conclusion (if it ever reaches the issue). (*See, e.g.*, Tr. at 34, 47-48; *see also* D.I. 21 at 2 ("While [Plaintiff's assertion that the November 2020 Policy is content-based] is certainly disputed, it was never the City's intent to create any content-based classifications.")) And rather than fight to retain the November 2020 Policy, Defendants instead quickly revised it, seemingly to address all of Plaintiff's concerns. (*See, e.g.*, D.I. 21 at 2)

Plaintiff contends that the City has never "disavowed" its past policies. (*See* D.I. 17 at 4) A mere failure to disavow, however, is far from a vigorous defense. As importantly, unlike in *Virgin Islands*, on which Plaintiff relies, here there is a dispute as to whether the challenged 2018 and 2019 policy ever even existed (or continues to exist). The City denies that it ever had the anti-religious-displays policy the Knights criticizes. (*See* D.I. 16 at 5) It appears to be

10

undisputed that no *written* policy was in place before the November 2020 Policy. In the circumstances presented here, then, the City's refusal to "disavow" what it contends is (and always was) a non-existent policy does not support a conclusion that the City is likely to resume its alleged past practices.

Plaintiff argues that the Court should consider an additional factor in its voluntary cessation analysis: Defendants' history of unconstitutional conduct. (*See* Tr. at 9-10) It is true that "in some cases, the character of the past violations" is relevant to determining whether allegedly unconstitutional behavior is likely to recur. *Del. Audubon Soc., Inc. v. Sec'y of U.S. Dep't of Interior*, 612 F. Supp. 2d 442, 448 (D. Del. 2009) (internal quotation marks omitted); *see also, e.g.*, *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 231 n.2 (3d Cir. 2008) (finding defendant's policy change did not moot case, "particularly given that plaintiffs' complaint alleged a long history of unconstitutional conduct [under the policy]"). Still, the focus remains on what is likely to occur in the future; where a history of past violations gives rise to a concern that a defendant will continue to behave in a similarly constitutionally infirm manner, a dispute is not likely moot. *See People Against Police Violence*, 520 F.3d at 231 n.2. Here, as already explained, whatever history of anti-religious conduct there may have been (if any) does not give rise to credible suspicions of the same conduct recurring before this Court can address the merits of the case with a final judgment. Plaintiff's argument regarding history, therefore, is unavailing.

Fundamentally, the Court sees no prospect that the City will return to the November 2020 Policy, much less to an anti-religious-displays policy that the City insists never even existed. Defendants have made the permanence of the Revised Policy clear – it has no end date, and it applies year-round. (*See* D.I. 21 at 5-6) In short, Defendants have met their heavy burden and

have shown that "subsequent events ma[k]e it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189. Thus, the voluntary cessation exception does not apply, and Plaintiff's motion is moot.[6]

### B. Ripeness

An independent, dispositive deficiency is that the claims on which Plaintiff now rests its motion are not ripe.

It is well-settled that a claim is not ripe until the government has had a chance to render a decision on the relevant application. *See Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 597 (3d Cir. 1998). Plaintiff is not presently seeking to display an unattended crèche on the Bandstand area but is, instead, now seeking to erect an ***attended*** crèche display there. (*See* Tr. at 11, 19-20) Plaintiff acknowledged at the oral argument that it had only formulated that request in response to the December 7 adoption of the Revised Policy and had not yet filed

---

[6] The mootness of Plaintiff's motion is also evident when the relief requested in Plaintiff's proposed order is considered. The Knights asks the Court to enter an order granting its motion and specifying as follows:

> 2. Defendants are prohibited from enforcing the City's no-religious-displays policy to prohibit religious displays on City property.
>
> 3. Defendants are prohibited from enforcing the City's no-religious-displays policy to reject the Knights' request to display a crèche on City property during the Christmas holiday season.
>
> 4. Defendants must provide the Knights the same benefits and opportunities to display a crèche at the Bandstand/Boardwalk Circle during the Christmas holiday season as Defendants provide any other private person, group, organization, and/or entity for any other display.

(D.I. 14-1 at 1-2) For the reasons explained throughout this Opinion, the City is not enforcing a no-religious-displays policy and is providing the Knights the same benefits and opportunities to display a crèche that it is providing any other private entity.

12

an application for a permit to display an attended crèche. (*See id.* at 11) Further, Defendants confirmed that the Revised Policy does not ban attended religious displays, and represented that if Plaintiff files a permit application for such a display, it would likely be granted. (*See id.* at 36, 45)[7] Given this state of the record, there is no ripe dispute for the Court to resolve in connection with the preliminary injunction motion.

Accordingly, the Knights' motion is denied for lack of ripeness.

C.    **Preliminary Injunction Factors**

Independent of the mootness and ripeness determinations, the Court concludes that Plaintiff has not met its burden to prove all four factors applicable to a motion for a preliminary injunction favor granting the pending motion.

The Court assumes, without deciding, that Plaintiff is likely to succeed on the merits of its claims that Defendants' past policies violated the Free Speech and Free Exercise Clauses of the First Amendment to the United States Constitution (*See* D.I. 15 at 10-18; D.I. 17 at 5-9) Plaintiff has provided evidence that the City may have engaged in impermissible viewpoint discrimination in 2018 and 2019 when it denied the Knights' request to display the crèche on City property "because it is religious." (D.I. 15 at 8) This same evidence is also probative of whether Defendants impermissibly burdened the Knights' religious practice. (*See id.* at 14-18) Plaintiff also argues that the November 2020 Policy was content-based because it targeted speech "associated with or intended to relate to the holiday season," and that it would fail strict scrutiny. (*See* D.I. 17 at 6-7) For purposes of the pending motion, the Court assumes Plaintiff

---

[7] Plaintiff suggests an application would be futile. (*See* Tr. at 30-31) Futility can be an exception to the ripeness requirement. *See, e.g., Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 296 (3d Cir. 2016). However, nothing in the record supports a finding that an application from Plaintiff made pursuant to the Revised Policy for an attended crèche display in the Bandstand area would be futile.

will prevail on all these arguments (making the further assumption that the claims are not moot) and, therefore, has met its burden on the first factor.

Even granting Plaintiff all these assumptions, the preliminary injunction motion must be denied because Plaintiff has failed to show it will suffer irreparable harm between now and the time of trial. There is no evidence that the City currently has an anti-religious-displays policy in place; if it ever had one, it was revoked by the adoption of the operative Revised Policy. Moreover, as the Court has already explained in connection with mootness, the City has met its burden to show that it is not likely to revert to its past practices (again, on the assumption that the past practices were what Plaintiff alleges). Plaintiff's allegations of irreparable harm rest on the risk that the City will revert back to an anti-religious policy, either by replacing the current Revised Policy or by failing to comply with the Revised Policy. (*See* Tr. at 25-26) As there is no evidence that these things will happen before this case can be concluded, there is no demonstrated irreparable harm.[8]

Plaintiff's irreparable harm contentions are further undermined by the fact that any additional modification of the Revised Policy would have to be made pursuant to the same public process that led to the adoption of the Revised Policy. (*See id.* at 34-35) That process includes the publication of an agenda at least one week in advance of a meeting of the Commissioners. (*Id.*) Consequently, any effort by the City to resume conduct Plaintiff challenges as violative of

---

[8] By separate Order being issued today, the Court will direct the parties to meet and confer and submit a proposed scheduling order. The Court will be receptive to any reasonable request that could culminate in case-dispositive motions and/or trial in advance of the 2021 holiday season.

14

its constitutional rights would necessarily involve notice to all interested members of the public (including the Knights) and an opportunity to be heard.[9]

Finally, the Court considers it relevant to the harm analysis that the Knights is not challenging the operative Revised Policy. The Knights' decision on this point may be due, at least in part, to the fact that the Revised Policy expressly treats all private entities the same: all are prohibited from erecting any unattended display on City property, and all may apply to erect an attended display in such places. Plaintiff's submissions are laden with pleas that the Court order Defendants to treat them the same as others. (*See, e.g.*, D.I. 14 at 1-2 (motion seeking to "require[] Defendants to provide the Knights the same benefits and opportunities to display a crèche at the Bandstand/Boardwalk Circle during the Christmas holiday season as Defendants provide any other private person, group, organization, and/or entity for any other display"); D.I. 17 at 2 ("Defendants continue to deny the Knights' simple request – that it be permitted to erect a display on the same terms as other private groups and individuals."); *id.* at 2 n.3 ("The Knights merely requests that the City be required to provide the Knights equal treatment.")) That Defendants' Revised Policy has already effectuated such a result is further confirmation that Plaintiff has failed to demonstrate irreparable harm.

Accordingly, again, the Court will deny the Knights' request for a preliminary injunction.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's motion for a preliminary injunction will be denied. An appropriate Order follows.

---

[9] Additionally, even though the Court is denying the pending motion for a preliminary injunction, this case remains open and Plaintiff is free to move for appropriate relief at any time.

15